UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

                                                             :
NEW YORK LEGAL ASSISTANCE                                    :
GROUP, INC.,                                                 :
                                    Plaintiff,               :        15 Civ. 3818 (LGS)
                                                             :
                    -against-                                :        **OPINION AND ORDER**
                                                             :
UNITED STATES DEPARTMENT                                     :
OF EDUCATION,                                                :
                                    Defendant.               :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/12/2017__

LORNA G. SCHOFIELD, District Judge:

        Plaintiff New York Legal Assistance Group ("NYLAG") brings this action against

Defendant United States Department of Education ("DOE"), seeking access to DOE documents

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Both parties cross-move

for summary judgment. For the following reasons, both motions are granted in part and denied

in part.

I.      **BACKGROUND**

        Plaintiff NYLAG is a non-profit legal services organization that investigates potentially

harmful practices by proprietary schools. On December 5, 2014, NYLAG submitted a FOIA

request to DOE, seeking "records relating to the Secretary's implementation and interpretation of

the regulations concerning borrower defenses to the repayment of student loans under the Direct

Loan and FFEL Programs." NYLAG brought the present action on May 18, 2015, after DOE

failed to respond to its FOIA request. In the following months, DOE worked with NYLAG to

provide documents responsive to NYLAG's request while clarifying and narrowing its scope.

Since June 2015, DOE has provided 2,820 pages of responsive records to NYLAG. DOE

redacted information from a number of these documents, and fully withheld (1) an

Administrative Wage Garnishment ("AWG") manual, (2) guidance concerning Total and Permanent Disability ("TPD") discharges and (3) drafts of manuals prepared for attorneys prosecuting student loan collections actions. In support of its decisions, DOE provided NYLAG with a draft *Vaughn* index setting forth the bases for withholding the information, which DOE contends is subject to one or more exemptions from FOIA. *See Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973); *see also ACLU v. U.S. Dep't of Justice*, 844 F.3d 126, 129 n.4 (2d Cir. 2016) (describing a *Vaughn* index).

On May 26, 2016, NYLAG notified DOE that it objected to certain of DOE's redactions. DOE reviewed the challenged redactions, revised some of them and produced new versions of the relevant documents to NYLAG. In a declaration, DOE represents that the responses provided to NYLAG represent a full document production with the exception of emails that DOE will review and produce subject to a decision on the present motions. DOE moves for summary judgment on its claimed FOIA exemptions, and NYLAG cross-moves for summary judgment seeking disclosure of certain of the challenged documents.

## II. STANDARD

Summary judgment is generally appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, a court is called upon to review agency action in response to a FOIA request, the court reviews the agency's determination to withhold requested information *de novo*, *see, e.g.*, *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 544 (2d Cir. 2016), and "proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 191 (2d Cir. 2012).

FOIA aims "to pierce the veil of administrative secrecy and to open agency action to the

light of public scrutiny." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 173 (2d Cir. 2014) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). "Thus, FOIA mandates the public disclosure of records of federal agencies upon request, unless one of nine statutory exemptions applies." *Id.* (citing 5 U.S.C. § 552(a), (b)(1)–(9)). Because FOIA manifests a "strong presumption in favor of disclosure," *Ray*, 502 U.S. at 173, courts "construe FOIA exemptions narrowly, resolving doubts in favor of disclosure and imposing on the government the burden of showing that an asserted exemption indeed applies." *Cook*, 758 F.3d at 173; *accord Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016) (exceptions to "FOIA's general principle of broad disclosure of [g]overnment records have consistently been given a narrow compass") (citation omitted).

An agency may carry its burden of demonstrating that an exemption applies by "submitting declarations giving reasonably detailed explanations why any withheld documents fall within an exemption." *Florez*, 829 F.3d at 182. Such declarations are accorded a presumption of good faith when they are "accompanied by reasonably detailed explanations of why material was withheld. Absent a sufficiently specific explanation from an agency, a court's *de novo* review is not possible and the adversary process envisioned in FOIA litigation cannot function." *Id.* (quoting *Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999)). Where an agency's declarations are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith, summary judgment for the government is warranted." *Ctr. for Constitutional Rights v. CIA*, 765 F.3d 161, 166 (2d Cir. 2014) (citation omitted).

## III. DISCUSSION

DOE invokes Exemptions 4, 5, 6, 7(C) and 7(E) in this litigation. NYLAG challenges DOE's withholding or redaction of certain documents only under Exemptions 5 and 7(E).

Summary judgment is granted to DOE without further discussion on the portions of documents that NYLAG does not challenge.  *See, e.g.*, *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*, 811 F. Supp. 2d 713, 738 (S.D.N.Y. 2011) (plaintiffs waived argument that defendants improperly asserted FOIA exemptions where they opted not to challenge defendants' assertions).

## A.    Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The exemption "encompass[es] traditional common law privileges against disclosure, including the attorney-client and deliberative-process privileges, and the work-product doctrine."  *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 189 (2d Cir. 2012) (citing *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005)).

### 1.  Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance."  *Id.* at 207 (internal citation omitted).  In the government context, the privilege "protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance."  *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  A government lawyer's analysis and recommendations regarding whether agency policies and positions comply with its legal obligations constitutes legal advice for purposes of the privilege.  *See id.* at 422.  The

attorney-client privilege "may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy." *La Raza*, 411 F.3d at 360.

DOE seeks to apply the attorney-client privilege to (1) a manual providing guidance to DOE attorneys handling AWG actions, (2) emails between DOE employees concerning the AWG manual and (3) emails between DOE employees and DOE attorneys concerning (a) DOE procedures for processing borrower claims, (b) interpretation of discharge regulations and (c) the resolution of specific borrower issues. In support of its redactions and withholdings, DOE offers two declarations by DOE employee Ann Marie Pedersen and a revised *Vaughn* index. In her second declaration, Pedersen avers that the AWG emails and manual "contain confidential legal advice concerning how to handle challenges to wage garnishment," and that the "confidentiality of these documents has been maintained." Pedersen further declares that the remaining emails contain "confidential communications" that "have been maintained as confidential."

DOE has provided sufficient information to exempt the AWG emails and manual under the attorney-client privilege. (ED2432, ED2433-69). The Pedersen declarations and *Vaughn* index establish that they are (1) attorney-client communications that (2) were intended to be, and were kept, confidential and that (3) were made to obtain or give legal advice. *See, e.g.*, *Brennan Ctr. for Justice*, 697 F.3d at 207. Likewise, DOE has provided sufficient information to support the application of the attorney-client privilege to email chains from November 10, 2014, and November 11, 2014, that "concern[] [the] scope of [the] Secretary's authority and how that authority may be used in connection with discharge of student loans [along with] interpretation of regulations related to" the discharge of such loans where "it is probable that [DOE] would pursue legal claims against the subject institution." (ED2383, ED 2412-17). The *Vaughn* index description of these documents establishes that they are attorney-client communications made for

the purpose of requesting and giving legal advice, while the second Pedersen declaration establishes that the documents were intended to be confidential and were maintained as such. *See id.* Summary judgment is granted to DOE as to these documents.

In contrast, DOE has not provided sufficient information to support the application of the attorney-client privilege to the remaining emails.[1] Unlike the AWG emails, the second Pedersen declaration does not characterize any of the remaining emails as requesting or giving legal advice, and nothing in the *Vaughn* index supports the inference that the "attorney-client communications" referenced in the index were anything other than emails that happened to include counsel on them. Absent any evidence that these emails were intended "for the purpose of obtaining or providing legal assistance," DOE has not met its burden of demonstrating that the attorney-client privilege applies. *Id.* DOE's motion for summary judgment is denied as to these documents.

The January 28, 2003, memorandum by attorney Vanessa Burton prepared at the request of DOE and discussing "the strength of the Department's legal position in response to a borrower's stated defense to loan repayment" (ED2853) would fall within the scope of the attorney-client privilege, except that neither the *Vaughn* index nor the Pedersen declarations attest that it was intended to be, or was maintained as, confidential. Thus, summary judgment is denied to DOE on this document as well.

### 2. Work-Product Doctrine

The work-product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena Dated*

---

[1] ED1929, ED1930-33, ED1934-37, ED1938-39, ED1940-42, ED1943-45, ED1946-47, ED1948-49, ED1950-51, ED1952-53, ED1954-55, ED2478-81, ED2482-84, ED2517, ED2522-25.

*July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).  A document is protected if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation," *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (citation omitted), even if the document's purpose was not to "assist in" litigation.  *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998).  "Conversely, protection will be withheld from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."  *Schaeffler*, 806 F.3d at 43 (citation omitted).

DOE seeks to apply the work product doctrine to (1) certain email chains, (2) a draft response letter "prepared by an attorney in contemplation of potential future litigation," (3) the January 28, 2003 memorandum from Vanessa Burton and (4) portions of the 2016 PCA manual, along with several documents that are exempt from disclosure under the attorney-client privilege as discussed above.

Summary judgment is granted as to DOE's motion to apply the work product doctrine to the draft response letter (ED2851), the Burton memorandum (ED2853) and an email chain among multiple attorneys containing "discussion and analysis . . . of the strength of [DOE's] positions on various claims or defenses to repayment, in contemplation of potential further litigation against the borrowers" (ED2860-65).  As each of these documents was prepared by an attorney in anticipation of litigation, the work product doctrine protects them from disclosure. *See In re Grand Jury Subpoena*, 510 F.3d at 183; *Schaeffler*, 806 F.3d at 43.

DOE's motion for summary judgment and work product protection is denied as to certain emails that contain allegedly predecisional or deliberative discussion of (1) regulatory interpretation and/or (2) resolution of a specific borrower's issues.  (ED2478-81, ED2482-84,

ED2522-25). Nothing in the *Vaughn* index or the Pedersen declarations indicates that the emails were prepared because of the prospect of litigation. *See Schaeffler*, 806 F.3d at 43.

Summary judgment is also denied as to DOE's motion to apply the work product doctrine to portions of PCA Procedures Manual 2.2 (the "PCA manual").[2] According to the *Vaughn* index, the manual was created in anticipation of litigation, and includes standards used by DOE in determining whether to begin litigation against a given borrower, guidelines for preparing for such litigation, and guidance on how to use the system to produce litigation reports. To the extent that any designated portion of the manual was created "by or at the behest of counsel," it is appropriately withheld under the work product doctrine. *In re Grand Jury Subpoena*, 510 F.3d at 183. However, neither the *Vaughn* index nor the Pedersen declarations make such a representation.

### 3. Deliberative Process Privilege

The deliberative process privilege is a subset of the work-product doctrine that "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which [g]overnment decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001); *see also Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002) (privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). The rationale behind the deliberative process privilege is "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is

---

[2] ED2696-99, ED2703-04, ED2707, ED2709, ED2711, ED2713, ED2715, ED2717, ED2719, ED2721, ED2723, ED2725, ED2727, ED2729, ED2731, ED2733, ED2735, ED2737-40, ED2750-54, ED2756.

to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the [g]overnment." *Tigue*, 312 F.3d at 76 (citation omitted).

"An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege [*i.e.,* section 552(b)(5)] if it is: (1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.,* actually . . . related to the process by which policies are formulated." *Brennan Ctr. for Justice*, 697 F.3d at 194 (citations omitted).  A document is predecisional if it "bear[s] on the formulation or exercise of policy-oriented judgment." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999).  Documents that are "merely peripheral to actual policy formation" are not protected. *Id.*

In determining whether a document is predecisional, courts consider whether the agency asserting the privilege can (1) "pinpoint the specific agency decision to which the document correlates" and (2) "verify that the document precedes, in temporal sequence, the decision to which it relates." *Id.* (citation omitted).  In determining whether a document is deliberative, courts look at whether the document (1) "formed an essential link in a specified consultative process," (2) reflects "the personal opinions of the writer rather than the policy of the agency" and (3) "if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id.* (citation omitted).

Even where a document is both predecisional and deliberative, the document nevertheless falls outside the scope of Exemption 5 protection if (1) the contents of the document have been formally or informally adopted as the agency's position on an issue or are used by the agency in its dealings with the public or (2) the document is more properly characterized as the "working law" of the agency. *See Brennan Ctr. for Justice*, 697 F.3d at 194–95.  Properly construed, the deliberative process exemption calls for disclosure of "all opinions and interpretations which

embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 114 (2d Cir. 2014) (citation omitted).

"[W]hether a particular document is exempt . . . depends not only on the intrinsic character of the document itself, but also on the role it played in the administrative process." *Brennan Ctr. for Justice*, 697 F.3d at 202 (citation omitted). Where "[t]here is no evidence in the record from which it could be inferred that [an agency] adopted the reasoning" of the documents at issue, the agency properly withholds the documents under Exemption 5. *See Wood v. FBI.*, 432 F.3d 78, 84 (2d Cir. 2005) (Sotomayor, J.).

DOE seeks to apply the deliberative process privilege to communications among DOE employees (1) identifying issues raised by borrower defense cases and (2) discussing both (a) what regulations apply to such cases and (b) how the cases should be handled. DOE represents that at the time these communications occurred, it "did not have an established policy applicable to borrower defense cases because [DOE] rarely encountered these types of claims prior to the collapse of Corinthian Colleges in April 2015." DOE further represents that the communications at issue predate its efforts to develop new regulations related to borrower defense claims and that "none of the withheld information contains advice or analysis related to those efforts or incorporated in [DOE's] final position on how borrower defense cases should be handled."

DOE also seeks to apply the deliberative process privilege to communications among DOE employees discussing (1) how DOE regulations should be interpreted, (2) how specific borrowers' issues should be resolved, (3) a pending investigation of a school and (4) internal DOE procedures. As to these documents, DOE represents that "the employees engaged in the

communications did not have final decision-making authority on the matters discussed, but rather, were expressing their own opinions on the issues."

DOE's motion for summary judgment is granted as to communications among DOE employees discussing (1) how to handle borrower defense claims and (2) how specific borrowers' issues should be resolved.[3]  Based on the *Vaughn* index and the Pedersen declarations, these documents were internal communications among agency employees identifying issues raised by borrower defense claims, discussing what regulations might apply to such claims and discussing how those cases should be handled.  These internal deliberations are properly withheld under the deliberative process privilege as they seek to aid employees in determining how to respond to borrower issues.  *See, e.g.*, *Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB.*, 845 F.2d 1177, 1180 (2d Cir. 1988) (applying deliberative process exemption to short intra-agency communications summarizing employee's analysis of particular case and/or providing recommended disposition of cases); *Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 280 (S.D.N.Y. 2012) (deliberative process privilege shields from disclosure "[employee's] personal opinions and recommendations, as well as his individual understanding of the rationale for current and upcoming adjustments to agency policies"); *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 546 (S.D.N.Y. 2010) (emails that debate how to resolve an issue can be predecisional).

That some of these deliberations predate DOE's efforts to develop new regulations does not change the analysis.  As explained above, DOE is entitled to deliberative process protection

---

[3] ED1767, ED1961-63, ED1964-65, ED1966-67, ED1968-70, ED1971-72, ED1973-74, ED1975-76, ED1977-78, ED1979-81, ED1982-84, ED1985-86, ED1987-88, ED2329, ED2330, ED2418-20, ED2421-23, ED2472-77, ED2478-81, ED2482-84, ED2487-88, ED2489-91, ED2492-95, ED2511-16, ED2517.

for communications in aid of agency decision-making, regardless of whether that decision is the creation of a regulation or something smaller like the resolution of a given borrower dispute. *See, e.g.*, *Local 3*, 845 F.2d 1177 at 1180. DOE has provided sufficient detail to justify the exclusion of communications containing deliberations about how to act in the absence of a formal policy. These informal, personal deliberations fit squarely within the deliberative process privilege. *See id.*

DOE also has provided sufficient information to support withholding emails and attachments concerning Corinthian Colleges loans.[4] The *Vaughn* index and Pedersen declarations establish that between February and March 2015, agency employees engaged in email discussions concerning how to handle borrower loans related to Corinthian Colleges, which collapsed in April 2015 after a Consumer Financial Protection Bureau lawsuit. Such discussions and attempts to seek guidance in advance of deciding how to handle the Corinthian loans are both predecisional and deliberative, and are properly withheld under the deliberative process privilege. *See id.*

DOE is likewise entitled to deliberative process protection for its draft guidance on school-based loan discharges and an email chain discussing the draft guidance. (ED2387, ED2388-90). Although NYLAG contends that there is reason to believe that the contents of these documents may have been incorporated into a final DOE policy, there is no evidence in the record to support this assertion. Consequently, DOE has properly withheld the documents under Exemption 5. *See Wood*, 432 F.3d at 84.

---

[4] ED1956-57, ED1958, ED1959, ED1960, ED1989-90, ED1991-92, ED1993, ED1994-95, ED1996-97, ED1998, ED2157-58, ED2159-60, ED2161, ED2331-2333, ED2501-02, ED2503-04, ED2505-06, ED2507, ED2508-10.

Lastly, the deliberative process privilege applies to emails containing "predecisional deliberation regarding regulatory interpretation." (ED2522-25, ED2526-29). NYLAG argues that these documents could constitute DOE's working law "to the extent that [they] describe [DOE's] working, practical understanding of its authority or policies," and that DOE has not provided sufficient information to make that determination. However, nothing in the description of the documents leads to the inference that the "deliberation regarding regulatory interpretation" was actually a statement of the agency's working law. The second Pedersen declaration attests that the documents' true purpose is "providing advice and opinions concerning how [DOE] regulations . . . should be interpreted." Such communications are properly withheld as predecisional and deliberative. *See, e.g.*, *Local 3*, 845 F.2d at 1180.

NYLAG argues that DOE has failed to meet its burden of proof as to each of the documents for which summary judgment is granted to DOE because DOE "makes only conclusory statements that the withheld documents, as a group, were not incorporated or adopted into final policies." According to NYLAG, DOE must make "an individualized showing for each document" in order to meet its burden. This argument is unpersuasive. Under the presumption of good faith afforded to agency declarations, *see, e.g.*, *Florez*, 829 F.3d at 182, DOE has satisfied its burden of demonstrating that the documents were not incorporated into a final agency policy. To provide more specificity in support of a declaration that the documents were not incorporated into a final agency policy, DOE would have to prove a negative -- that none of the documents was incorporated into *any* agency policy. FOIA does not require such an undertaking. *See Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 245 (2d Cir. 2006) ("While the government retains the burden of persuasion that information is not subject to disclosure under FOIA, a party who asserts that material is publicly

available carries the burden of *production* on that issue . . . . To hold otherwise would require the opponent of disclosure to prove a negative . . . .") (citations omitted); *accord Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency*, 827 F. Supp. 2d 242, 257–58 (S.D.N.Y. 2011).

NYLAG further argues incorrectly that DOE has failed to identify the specific decision to which each "predecisional" document relates, and therefore failed to meet its burden. DOE has identified the specific decisions to which the predecisional documents relate -- how to handle a specific borrower claim or how to handle borrower defenses in the absence of a formal policy. For the draft guidance, the decisions at issue were those made in advance and in aid of the final guidance.

Summary judgment is denied to DOE on its motion to exempt portions of the Total And Permanent Disability System High-Level Requirements: Appendix B. (ED1803, ED1804, ED1805). The *Vaughn* index describes these documents as "[g]uidelines establishing the methodology and analysis tools by which [DOE] develops micro and macro policy changes." Based on this description, the document could constitute agency policy or working law. *See Brennan Ctr. for Justice*, 697 F.3d at 194–95. As neither Pedersen declaration provides otherwise, DOE has failed to meet its burden of justifying the application of the deliberative process privilege to these documents.

For the same reason, DOE has also failed to justify withholding (1) an email chain regarding "TOP and TPD," which it describes as "[c]ommunications among [DOE employees] concerning interpretation of DOE guidance and regulations" (ED2391), (2) an email containing "communications among DOE employees and employee of DOE contractor related to internal DOE procedures" (ED2496-99), (3) several email chains containing "communications related to

internal DOE procedures on processing borrower claims,"[5] (4) an email chain containing "excerpts from internal briefing document regarding a particular school" (ED2424-31) and (5) an email chain containing "internal guidance related to [a] possible borrower defense claim" (ED2470-71). Each of these documents could refer to working law. While the Pedersen declarations refer to internal discussions on borrower defense cases, the declarations do not establish that employee communications "related to" internal procedures and guidance *are* employee interpretations of that guidance. Based on the descriptions of the documents in the *Vaughn* index (quoted above), the documents could just as easily be internal memoranda explaining the agency's interpretation of its own guidance, internal procedures and regulations. Consequently, summary judgment is denied as to these documents.

Summary judgment is also denied as to DOE's motion to exclude an email concerning the development of slides for training to be given to employees of the San Francisco Discharges and Specialty Claims Division. (ED2314). DOE has not provided any information to support the conclusion that the email pertaining to the presentation slides was predecisional or deliberative, much less both. *See Davis v. City of New York*, No. 10 Civ. 699, 2011 WL 1742748, at *6 (S.D.N.Y. May 5, 2011) (declining to apply deliberative process privilege to training materials that were intended to explain existing policy).

Lastly, summary judgment is denied on DOE's motion to exclude an email chain containing "information that is predecisional/deliberative related to school under investigation by OIG." (ED2485-86). The description of the document is too vague to determine whether the information contained within it is actually predecisional and deliberative, and nothing in the

---

[5] ED1929, ED1930-33, ED1934-37, ED1938-39, ED1940-42, ED1943-45, ED1946-47, ED1948-49, ED1950-51, ED1952-53, ED1954-55.

Pedersen declarations sheds light on whether the privilege should apply. *See Halpern*, 181 F.3d at 293 (vague affidavit insufficient to support claimed FOIA exemption).

### B.       Exemption 7(E)

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As used in Exemption 7(E), "techniques and procedures" include the methods used in an investigation, while "guidelines" includes guidance about resource allocation and subjects worthy of investigation. *See generally Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010). Whether a document would disclose law enforcement "techniques and procedures" is considered separately from whether it would "disclose guidelines." *See Iraqi Refugee Assistance Project v. U.S. Dep't of Homeland Sec.*, No. 12 Civ. 3461, 2017 WL 1155898, at *5 (S.D.N.Y. Mar. 27, 2017).

Discussion of law enforcement techniques and procedures is categorically exempt from FOIA disclosure, "without need for demonstration of harm." *Allard K. Lowenstein*, 626 F.3d at 681 (citation omitted). To fall within this categorical exemption, law enforcement techniques and procedures must not be generally known to the public. *See, e.g.*, *Schwartz v. U.S. Drug Enforcement Admin.*, No. 16-750-CV, 2017 WL 2451976, at *1 (2d Cir. June 6, 2017) (summary order); *Doherty v. U.S. Dep't of Justice,* 775 F.2d 49, 52 n. 4 (2d Cir. 1985). Information that would disclose guidelines may be withheld under Exemption 7(E) only if such disclosure "could

reasonably be expected to risk circumvention of the law." *Allard K. Lowenstein*, 626 F.3d at 681.

DOE seeks to apply Exemption 7(E) to (1) the PCA manual,[6] (2) information from the guidance DOE provides to the loan servicer that evaluates applications for a TPD loan discharge,[7] and (3) the AWG manual, which is exempt under the attorney-client privilege and not discussed further. According to the second Pedersen declaration, DOE withheld from the PCA manual "only guidelines for determining whether and how to enforce collection of or compromise an amount due," and withheld from the TPD guidance "only guidance concerning physician requirements and how the servicer should evaluate other information in determining a borrower's entitlement to a TPD discharge." DOE represents that the disclosure of the information contained in these documents would enable borrowers to avoid repayment of their loans, and would increase the risk of fraudulent claims.

Though DOE has provided sufficient evidence to demonstrate that the contested documents are enforcement guidelines, the disclosure of which could reasonably be expected to risk circumvention of private loan obligations, DOE fails to meet its burden of demonstrating the threshold issue necessary to prove the applicability of Exemption 7(E) -- that the challenged documents were compiled for "law enforcement purposes." *See Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 386 (S.D.N.Y. 2014). The term "law enforcement" pertains

---

[6] ED2561-62, ED2565, ED2567, ED2569-71, ED2583-89, ED2592, ED2598-2604, ED2605-06, ED2613-14, ED2618-20, ED2623-29, ED2637-38, ED2640-47, ED2684-86, ED2689-93, ED2696-99, ED2703-04, ED2707, ED2709, ED2711, ED2713, ED2715, ED2717, ED2719, ED2721, ED2723, ED2725, ED2727, ED2729, ED2731, ED2733, ED2735, ED2737-40, ED2750-54, ED2756, ED2758-63, ED2766-67, ED2768-77, ED2780, ED2783-90, ED2798-2803, ED2809-10, ED2811, ED2814-15, ED2816-17, ED2818-20.

[7] ED1786, ED1790, ED1793, ED1794, ED1806, ED1807, ED1808, ED1809, ED1810, ED1811, ED1812, ED1813, ED1814, ED1821, ED1823, ED1824, ED1825, ED1826, ED1827, ED1828, ED1835, ED1836, ED1837, ED1839.

to the prevention and punishment of violations *of the law*. *See Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014); *Miller v. United States*, 630 F. Supp. 347, 349 (E.D.N.Y. 1986). Here, DOE seeks to prevent violations of the terms of student loan contracts, not violations of the law. The PCA manual and TPD guidelines therefore do not qualify as "law enforcement" documents. *See Wood v. F.B.I.*, 312 F. Supp. 2d 328, 345 (D. Conn. 2004), *aff'd in part, rev'd in part on other grounds and remanded*, 432 F.3d 78 (2d Cir. 2005) ("investigation conducted by a federal agency for the purpose of determining whether to discipline employees for activity which does not constitute a violation of law is not for law enforcement purposes under Exemption 7") (citation omitted).

In its reply brief, DOE concedes that borrowers' obligations to pay DOE "originated in a contract" but contends that the collection mechanisms in the challenged documents "go well beyond mere enforcement of the terms of a contract" because they "address the enforcement mechanisms by which the Department carries out its statutory mandate to collect defaulted debt." This argument is unavailing. First, as explained above, the fact that DOE has a legal mandate to collect debt does not mean that the collection of the debt serves a "law enforcement purpose," which means preventing, prosecuting or punishing violations of the law. Second, although DOE credibly argues that disclosure of its enforcement mechanisms could lead to borrowers' circumventing their contractual obligations, DOE cannot prove that disclosure "could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E), because the borrowers would not be circumventing the law -- they would be circumventing the terms of their contract. That circumvention would make it difficult for DOE to carry out its statutory mandate is irrelevant to the question at issue.

DOE cites two cases in which similar enforcement guidelines were appropriately withheld under Exemption 7(E), but neither case supports the proposition that an agency may withhold documents that it uses to enforce private contracts. In *Mayer Brown LLP v. IRS*, 562 F.3d 1190 (D.C. Cir. 2009), the D.C. Circuit applied Exemption 7(E) to IRS documents, including "settlement strategies and objectives" and "acceptable ranges of percentages for settlement." *Id.* at 1192. In *Bagwell v. U.S. Dep't of Educ.*, 183 F. Supp. 3d 109 (D.D.C. 2016), the District Court for the District of Columbia upheld the application of Exemption 7(E) to records that would have allowed institutions under investigation to evade compliance with the Clery Act. *See id.* at 125. Both of those cases dealt with an agency attempting to enforce the law -- federal tax laws that impose criminal and civil penalties in *Mayer Brown*, and the Clery Act in *Bagwell*. *See Mayer Brown*, 562 F.3d at 1192–93; *Bagwell*, 183 F. Supp. 3d at 115. Where, as here, the agency is not seeking to enforce a law, it cannot demonstrate that its enforcement documents were compiled for "law enforcement purposes." Accordingly, summary judgment is granted to NYLAG as to these Exemption 7(E) withholdings.

DOE is entitled to summary judgment as to an email attachment regarding the TPD guidance (ED2392-2411), as it comprises discussions about how to ensure compliance with a Title IV regulation in light of "potential vulnerabilities in existing regulations and guidance." Based on that description, disclosure of such a document could risk circumvention of the law. *See Allard K. Lowenstein*, 626 F.3d at 681. Summary judgment is therefore granted to DOE as to the document.

## C.     Next Steps

For the reasons explained above, summary judgment is granted to DOE as to all documents except:

- ED1786, ED1790, ED1793, ED1794,

- ED1803, ED1804, ED1805, ED1806, ED1807, ED1808, ED1809, ED1810, ED1811, ED1812, ED1813, ED1814, ED1821, ED1823, ED1824, ED1825, ED1826, ED1827, ED1828, ED1835, ED1836, ED1837, ED1839,

- ED1929, ED1930-33, ED1934-37, ED1938-39, ED1940-42, ED1943-45, ED1946-47, ED1948-49, ED1950-51, ED1952-53, ED1954-55,

- ED2314, ED2391,

- ED2424-31, ED2470-71, ED2485-86, ED2496-99,

- ED2561-62, ED2565, ED2567, ED2569-71, ED2583-89, ED2592, ED2598-2604,

- ED2605-06, ED2613-14, ED2618-20, ED2623-29, ED2637-38, ED2640-47, ED2684-86, ED2689-93, ED2696-99,

- ED2703-04, ED2707, ED2709, ED2711, ED2713, ED2715, ED2717, ED2719, ED2721, ED2723, ED2725, ED2727, ED2729, ED2731, ED2733, ED2735, ED2737-40, ED2750-54, ED2756, ED2758-63, ED2766-77, ED2768-77, ED2780, ED2783-90, ED2798-2803,

- ED2809-10, ED2811, ED2814-15, ED2816-17 and ED2818-20

(the "Remaining Documents").

By August 1, 2017, DOE shall review the Remaining Documents, along with any outstanding emails, and release to NYLAG any documents that do not meet the standards for at least one of the exemptions discussed above.  By August 4, 2017, DOE shall file a revised *Vaughn* index containing further justification for any remaining withholdings.  The parties shall submit a joint status letter no later than August 11, 2017, proposing a briefing schedule for supplemental motions for summary judgment on any unresolved disputes.

## IV.    CONCLUSION

For the foregoing reasons, DOE's motion for summary judgment is GRANTED in part and DENIED in part and NYLAG's motion is GRANTED in part and DENIED in part.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 50 and 59.

Dated: July 12, 2017
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE